The Lawndale National Bank of Chicago, Appellant,
v. Kaspar American State Bank, Appellee.

Gen. No. 38,840.

Opinion filed February 9, 1937.

KLENHA & GREENFIELD, of Chicago, for appellant; WILLIAM E. ANDERLE, of Chicago, of counsel.

SABATH, PERLMAN, GOODMAN & REIN and RING, UHLIR & CUCHNA, all of Chicago, for appellee; MORTON C. CHESLER, MORRIS L. KILMNICK and OTTO F. RING, all of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

The Lawndale National Bank of Chicago, as successor trustee under the last will and testament of William C. Schreiber, deceased, filed its complaint against the Kaspar American State Bank, its predecessor in trust, for an accounting of the trust estate, seeking to subject defendant to liability for its investment of $16,000 of funds belonging to the trust estate in certain bonds which defendant owned in its individual capacity. The chancellor dismissed the complaint for want of equity, and this appeal followed.

From the essential facts it appears that November 23, 1922, William C. Schreiber made his last will and testament, nominating as executor and trustee the Kaspar State Bank, of which he was a stockholder and director. The will was attested by three witnesses who were all stockholders of the bank. One of the witnesses was also an officer of the bank and another its attorney. Upon the consolidation of the Kaspar State Bank with the American State Bank, under the name of Kaspar American State Bank, the three attesting witnesses became stockholders of the new institution and continued and remained stockholders thereof. Schreiber died November 29, 1923. His last will and

testament was admitted to probate and letters testamentary issued to the Kaspar State Bank as executor on January 15, 1924. February 19, 1926, the Kaspar American State Bank, defendant herein, as successor to Kaspar State Bank, filed its final account as executor of the estate of William C. Schreiber, which was approved subject to the production of certain vouchers, and March 31, 1926, the executor was discharged and the estate closed. January 22, 1926, while the bank was still acting as executor, it purchased from itself, individually, for the trust estate the following securities, in the total sum of $16,000:

"$6,000 of bonds executed by Sokol Slavsky Gymnastic Association, bearing interest at 6% per annum, being part of total issue of $500,000 secured by trust deed to Kaspar American State Bank as Trustee.

"$5,000 of bonds executed by Abe Adler and Joe Levin, bearing interest at 6% per annum, being part of a total issue of $60,000 secured by trust deed to Kaspar American State Bank as trustee.

"$5,000 of bonds executed by Joseph and Rose Jiracek, bearing interest at 6% per annum, being part of a total issue of $75,000, secured by trust deed to Kaspar American State Bank as trustee."

The last will and testament empowered the trustee to invest the trust estate—
"in such income bearing securities as said trustee in its discretion may select, preference being given in the order of their sequence to: loans secured by trust deeds or mortgages on improved real estate in Cook County. . . . To sell or change such investments at any time . . . provided, however, *that said trustee may purchase for the account of said trust estate from the Kaspar State Bank individually, such trust deeds or mortgages, bonds or securities as said bank may offer or sell to the public generally, without liability to account to said trust estate for the usual commissions which may*

*have been charged by said bank individually for the making of any such loans . . . ."* (Italics ours.)

The loans of which these investments are a part were originally made and negotiated through the officers of the defendant, individually, and the total issues of each of these loans were originally owned and held by defendant in its individual capacity. It charged the makers of the loans commissions of three per cent and received these commissions from the borrowers.

November 17, 1932, the superior court confirmed the appointment of a receiver for the defendant bank and entered an order authorizing the receiver to resign this trust on behalf of defendant. At the same time plaintiff was designated as the successor trustee under the provisions of the will, and upon filing its acceptance of the appointment the receiver delivered to it, among other assets of the estate, the securities involved herein.

We have heretofore held it to be the rule, as plaintiff contends, and as laid down in numerous decisions throughout the United States, including Illinois, that a trustee, even though acting in good faith, cannot invest funds of the trust estate in securities owned by him in his individual capacity. (*Michoud v. Girod,* 4 How. (U. S.) 503; *St. Paul Trust Co. v. Strong,* 85 Minn. 1; *Cornet v. Cornet,* 269 Mo. 298; *Magruder v. Drury,* 235 U. S. 106; *Joliet Trust & Savings Bank v. Ingalls,* 276 Ill. App. 445; *Bold v. Mid-City Trust & Savings Bank,* 279 Ill. App. 365.) The rule enunciated in these decisions is based on sound public policy and is designed to remove every possible temptation from a trustee to make the trust fund a dumping ground for his own unsatisfactory ventures. It has been designated as an "inflexible rule," followed in cases where the best of faith, care and prudence were exercised and under circumstances showing that the loans were perfectly secured and for the highest rate of interest ordinarily obtainable.

Defendant, while conceding this to be the rule applicable to the investment of trust funds, relies by way of defense and in justification of the investment in its own securities, upon the provisions of the ninth clause of the will, hereinbefore set forth, authorizing the trustee to purchase "for the account of said trust estate from the Kaspar State Bank, individually, such trust deeds or mortgages, bonds or securities as said bank may offer or sell to the public generally . . ." and authorities are cited purporting to hold that this rule of law may be abrogated by provision in the trust instrument, allowing the trustee to purchase from himself at a profit, or by express or implied waiver.

The position for which defendant contends is not without authority, but there are also cases holding that "no rule is more fully settled than that which forbids a trustee dealing with himself in respect of trust property, that no fraud in fact need be shown by the beneficiaries, and that no excuse can be offered by the trustee to justify such transactions. The fact established, the result inevitably follows." (*Baldwin v. Allison,* 4 Minn. 11, 25; *Bold v. Mid-City Trust & Savings Bank,* 279 Ill. App. 365, 371, 372; *Michoud v. Girod, supra; King v. Remington,* 36 Minn. 15; *Cornet v. Cornet, supra;* Pomeroy's Eq. Jurisprudence [3d ed.], sec. 958.)

It is urged by plaintiff, however, that notwithstanding the authorization of the trustee to purchase its own securities with funds of the estate, this defense is not available in the instant proceeding because the appointment of the defendant by Schreiber's will as executor and trustee was *null and void,* the attesting witnesses thereto having been stockholders of the bank. The law is well settled that a person who is appointed executor or trustee, or both, by will, is incompetent to attest it as a witness, because he will gain the commissions allowed by law if the will is established. (*Godfrey v. Phillips,* 209 Ill. 584; *Jones v. Grieser,* 238 Ill.

183; *Jones v. Abbott,* 235 Ill. 220.) This same doctrine has evidently been extended to cover cases where the trustee or executor nominated in the will is a corporation, and where one of its stockholders has attested same as a witness.

The question was presented to the court in *Scott v. O'Connor-Couch,* 271 Ill. 395. In that case Michael O'Connor executed his will at the People's Trust & Savings Bank in Galesburg, where he had done considerable business. The attestation clause was in the usual form, containing all the statutory requirements, and was signed by Nellie Stark and W. H. Pankey as witnesses. Nellie Stark was a stenographer and clerk in the bank, and testified to the execution of the will and that in her opinion the testator was at the time of sound mind and memory. Pankey testified to the same effect, but his testimony was stricken because, when the will was executed he was a director and stockholder of the bank which was appointed executor. In an exhaustive opinion, written by Mr. Justice Cartwright, reviewing the decisions and interpreting the statute applicable to the attestation of wills, the court concluded that Pankey, as a stockholder and director of the bank, was directly interested in its appointment as executor, and that "the legislative will that the beneficial interest of an attesting witness shall be null and void can only be made effective as to the stockholder of a corporation *by declaring null and void* the provision which gives an interest to his corporation." The decision arises from a construction of section 8 of the statute of wills (sec. 8, ch. 148, Illinois State Bar Stats. 1935, ¶ 8; Jones Ill. Stats. Ann. 110.220) which removed the incompetency of the witness to the execution of the will to whom any beneficial devise, legacy or interest was made or given by the will, and provided that such witness should be compellable to appear and give testimony on the residue of the will in like manner as if no such devise or bequest had been made, but

the devise, legacy or interest was declared to be null and void unless the will had been duly executed by a sufficient number of witnesses exclusive of such person, saving, however, to the witness any share of the testator's estate not exceeding the value of the devise or bequest to which the witness would have been entitled if the will was not established.

The rule laid down in *Scott v. O'Connor-Couch, supra,* was approved in the later decision of *Olson v. Larson,* 320 Ill. 50, wherein it was again held that where a testator gives all his estate to a bank in trust the will is not void because stockholders of the bank are the only attesting witnesses but the provision appointing the bank as trustee and as executor is void, and inasmuch as the court will not permit a trust to fail for want of a trustee a competent trustee should be appointed as well as an administrator *de bonis non.* It was there contended by defendants that the decision in the *Scott* case, *supra,* was at war with a long line of other cases decided by the Supreme Court and ought therefore to be overruled, but with reference to this contention the court said:

"We have carefully examined the cases to which plaintiffs in error have referred as being in conflict with the *Scott* case. We are satisfied with that decision and that it is not in conflict with the previous decisions of this court under the amended statute." The effect of these two decisions can no longer be questioned, and as a result of the rule enunciated it must be held that the appointment of the Kaspar Bank as executor and trustee was, under the circumstances of this case, *null and void.* It would logically follow therefore that the defendant took as trustee in the estate of William C. Schreiber, not under the will or under the authority therein contained, but only by virtue of its own act and operation of law.

An analogous situation applicable, however, to an executor and not a trustee, arose in the case of *Penn v.*

*Fogler,* 182 Ill. 76, wherein George W. Brown was appointed administrator with the will annexed in the estate of Nathaniel M. McCurdy, deceased. It was claimed that inasmuch as the decree gave Brown generally ''all the powers, rights, duties and authority that an executor could or might have, if named and mentioned in said will,'' that Brown was thereby clothed with power to manage the bank stock which was part of the estate in accordance with the terms of the will. The court held, however, on authority of *Hall v. Irwin,* 2 Gilm (Ill.) 176, that the words hereinabove quoted did not confer upon an administrator with the will annexed the right to exercise the trust powers conferred upon an executor, but only the powers appertaining strictly to his office as executor, that he had no authority to execute the trust in regard to the bank stock and that his acts in so doing constituted him a constructive trustee, or a trustee *de son tort.* In this connection the court said (p. 96):

''Where one without authority undertakes to execute a trust, requiring the investment of a fund, he must himself carry all the risks, and make good all the losses, and have none of the profits, and his co-investors are equally liable. 'A person may become a trustee by construction by intermeddling with and assuming the management of trust property without authority. Such persons are trustees *de son tort.*' (Perry on Trusts,—3d ed.—sec. 245; *Morris v. Joseph,* 1 W. Va. 256; *Piper v. Hoard,* 107 N. Y. 73.) '*During the possession and management by such constructive trustees, they are subject to the same rules and remedies as other trustees.*' '' (Italics ours.)

The conclusion to be reached from these decisions is that inasmuch as the appointment of the Kaspar Bank as executor and trustee was null and void, the bank could not rely upon its appointment under the will and the authorization therein to invest trust funds

in its own securities; that it assumed the trusteeship by its own act and not in pursuance of the designation in the will, as a consequence of which its conduct becomes subject to the same scrutiny as that of any trustee. Therefore, the question whether defendant was justified in purchasing its own securities with funds of the trust estate is to be determined upon equitable principles governing the rights and duties of trustees, and not by the specific authorization in the will. These principles have already been stated and are fully discussed in *Bold v. Mid-City Trust & Savings Bank, supra,* wherein authorities from various States are cited and fully analyzed.

This cause was heard by the chancellor upon certain stipulated facts. Defendant offered to stipulate that if certain witnesses, whose competency was objected to by plaintiff, were permitted to testify, their testimony would disclose that Schreiber was a depositor in, borrowed from, and was a stockholder of the defendant bank for many years, as well as a director for approximately two and one-half years prior to his death; that he attended all the meetings of the board while he was a director, and that all real estate mortgages made by the bank during that period were approved by the board in his presence; that the will in question was drawn and executed at defendant's office; that Schreiber selected the witnesses to his will, and although his attention was called to the fact that the witnesses were connected with the bank, which made their competency questionable, that Schreiber nevertheless insisted that they attest his will. The competency of the witnesses through whom defendant offered to prove these facts was challenged on the ground that they were disqualified under sec. 2 of the Evidence Act (Ill. State Bar Stats. 1935, ch. 51, ¶ 2; Jones Ill. Stats. Ann. 107.068). The court made no ruling on the offer, and in view of our conclusion as to the rule ap-

plicable to the liability of trustees we regard it unnecessary to pass upon the question. However, it is evident from the offer that Schreiber, as well as the attesting witnesses, who were stockholders and officers of the bank, were apprised of their disqualification as witnesses by reason of the fact that they were stockholders of the bank which had been designated as trustee in the will. Under the circumstances it was all the more incumbent upon those of the attesting witnesses who were charged with administrative duties of the bank to exercise the most careful scrutiny and care in the selection of investments made by the bank as trustee, notwithstanding the specific authorization in the will permitting the trustee to purchase securities of its own issue. One witness, who was the cashier of the bank and an officer, and another, as its counsel, knew that stockholders of the corporation were not proper attesting witnesses and their knowledge is imputed to the other officers who had charge of the bank's investments and who also are presumed to know the law.

It is urged by defendant, however, that this case can be distinguished from *Scott v. O'Connor-Couch* and *Olson v. Larson, supra,* because the competency of the attesting witnesses was not questioned when the will was admitted to probate and cannot now be attacked collaterally. This contention is not well taken because no attack is here made upon the will itself, but only upon the qualification of the trustee to act. Under the ruling in the *Scott v. O'Connor-Couch* and the *Olson v. Larson* cases the nomination of the defendant as executor and trustee was rendered void by reason of the fact that the subscribing witnesses were all stockholders of the bank. The validity of this will is not questioned.

Defendant's counsel also stress the point that the beneficiaries were present in the probate court by their counsel when the bank's final report as executor was

approved and that they made no objection; that no direct proceeding was instituted to review or reverse the order admitting the will to probate; and that after so many years they ought not to be heard to raise the question. The stipulated facts indicate that four of the beneficiaries were at the time of the hearing, and still are, minors. The law is well settled that in order to constitute ratification of an act it must be shown that the *cestui que trustent* had full and complete knowledge of the act, as well as knowledge of their legal rights, and were under no disability to assert them. (*White v. Sherman,* 168 Ill. 589, 605; *Joliet Trust & Savings Bank v. Ingalls,* 276 Ill. App. 445.) The suggestion of acquiescence, ratification or estoppel as a defense to this action appears to be an afterthought, because it was not raised or presented on the trial.

Various other points are urged, both for reversal and affirmance of the decree, but we regard those discussed as determinative of the issues involved and see no useful purpose in prolonging the discussion. For the reasons stated we are of the opinion that the decree of the circuit court should be reversed and the cause remanded with directions to enter judgment in favor of plaintiff and against defendant for $16,000, together with legal interest thereon from January 22, 1926, the date of the investments herein, to the date of the judgment, less any interest credited to the trust estate on account of the investments in question, and that upon payment of said sum plaintiff be ordered to return to defendant the securities involved.

*Reversed and remanded with directions.*

JOHN J. SULLIVAN, P. J., and SCANLAN, J., concur.